# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MARIA LOPEZ-HERRERA,<br><br>        Petitioner,<br>v.<br><br>WILLIAM BARR, et al.,<br><br>        Respondents. | Case No. 2:19-cv-01153-APG-NJK<br><br>ORDER<br><br>(ECF Nos. 3, 8) |

Petitioner Maria Lopez-Herrera has filed a Petition for Writ of Habeas Corpus (ECF No. 1) under 28 U.S.C. § 2241 seeking review the of constitutional and legal issues arising from multiple bond determinations by an immigration judge. She alleges violations of due process and her fundamental rights as a parent because her detention and lack of transportation to family court proceedings will lead to termination of her parental rights. Presently before me is Lopez-Herrera's Emergency Motion for Stay of Removal Proceedings (ECF No. 3) ("emergency motion").

On July 5, 2019, although I questioned whether have jurisdiction to grant any of the relief requested in the petition, I temporarily enjoined Lopez-Herrera's removal proceedings pending briefing on the emergency motion. ECF No. 5. The respondents have now opposed and moved to dismiss. ECF No. 8.[1] Lopez-Herrera replied in support of the emergency motion and opposed the motion to dismiss. ECF No. 11. Because Lopez-Herrera has not exhausted her administrative remedies, I vacate the order granting temporary relief, deny Lopez-Herrera's emergency motion,

---

[1] The respondents failed to separately file the motion to dismiss in accordance with the Local Rules of Practice. *See* LR IC 2-2(b) ("For each type of relief requested or purpose of the document, a separate document must be filed and a separate event must be selected for that document…."). As a result, there is no distinct ECF number for their motion to dismiss.

grant the respondents' motion to dismiss, and dismiss the petition without prejudice as unexhausted.

## I. BACKGROUND

Lopez-Herrera is a citizen of Mexico who is currently detained by the Immigration and Customs Enforcement ("ICE") division of the Department of Homeland Security ("DHS") in Henderson, Nevada. ECF No. 1 at ¶ 1. She entered the United States without inspection in 1997. ECF No. 1-1 at 15. Lopez-Herrera has four children who are United States citizens, three of whom are minors. ECF No. 3-2.

### *A. State Court Proceedings*

In November 2017, Lopez-Herrera was arrested by the Las Vegas Metropolitan Police Department ("LVMPD") and charged with two felony counts of child abuse and neglect in the Eighth Judicial District Court for Clark County, Nevada ("state court"). ECF No. 1-1 at 15. The arrest and charges stemmed from Lopez-Herrera's minor daughter's allegations of sexual abuse by her step-father. ECF No. 1-1 at 19. Lopez-Herrera was detained at the Clark County Detention Center ("CCDC") while the criminal charges were pending. ECF No. 1-1 at 15.

As a result of Lopez-Herrera's arrest and criminal charges, the Clark County Department of Family Services ("DFS") took Lopez-Herrera's children into protective custody pursuant to a Confidential Protective Custody Report ("confidential report"). ECF No. 1-1 at 18–22. Based on the allegations of the confidential report, the state court's family division ("family court") initiated a juvenile dependency proceeding and Lopez-Herrera's children became wards of the court. *Id.* DFS placed the children in the foster care of relatives, where they remain today. *Id.*

In accordance with Nevada law, DFS developed an individualized permanency plan with the goal of reuniting Lopez-Herrera with her children ("permanency plan"). ECF No. 3-2. While

she was in state custody, Lopez-Herrera purportedly met with the DFS case worker and was transported to hearings in family court on the juvenile dependency matter, and her participation was sufficient to sustain the permanency plan. ECF No. 3 at 3, ¶¶ 9–10. Attorney Christopher R. Tillman represents Lopez-Herrera before the family court. ECF Nos. 11-2, 11-3.

On November 1, 2018, Lopez-Herrera pleaded guilty to one gross misdemeanor count of conspiracy to commit a crime. ECF No. 1-1 at 91; *see also* ECF No. 1-3 at 45–52 (agreement to testify and guilty plea agreement). However, on March 28, 2019, the state court granted the prosecution's motion to withdraw Lopez-Herrera's guilty plea and dismissed the matter with prejudice. ECF No. 1-3 at 58.

### *B. Immigration Proceedings*

Shortly after Lopez-Herrera's November 2017 arrest, she was interviewed at CCDC by an LVMPD officer who was acting as a designated immigration officer pursuant to Section 287(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*. ECF No. 8-1 at 3, ¶¶ 4. An immigration detainer was also lodged against her. *Id.* The LVMPD officer created a Form I-213, Record of Deportable/Inadmissible Alien, which was later incorporated into another Form I-213 completed by an ICE officer. *Id.*

Following Lopez-Herrera's November 2018 guilty plea in state court, she was released from state custody and taken into custody by ICE. *Id.* ¶ 5. An ICE officer conducted a second interview with Lopez-Herrera regarding her immigration status. *Id.* The ICE officer created another Form I-213, incorporating notes from both the first and second interviews, as well as Lopez-Herrera's arrest report, records of conviction in state court, and the confidential report filed in family court. *Id.* ¶ 6. Once that investigation was completed, on November 22, 2018

DHS served Lopez-Herrera with a Notice to Appear, which charges her as removable under INA § 212(a)(6)(A)(i). *Id.*; *see also* ECF No. 1-1 at 2–3.

### C. The Bond Hearings

#### 1. First Bond Hearing

Lopez-Herrera appeared with counsel at an initial bond hearing in January 2019. ECF No. 8-1 at 4, ¶ 7. She asked the immigration judge ("IJ") to be released from custody on bond, "citing her cooperation with state prosecutors on a criminal case and her need to comply with a 'case plan' issued by the state family court, or risk having her parental rights terminated." ECF No. 8 at 3:17–19.[2] DHS argued she presented a danger to the community, citing the Form I-213 and the confidential report, and urged the IJ to detain her for the duration of the removal proceedings. ECF No. 8-1 at 4, ¶ 7. After hearing argument from both parties, the IJ found that Lopez-Herrera was a danger to the community and denied bond. ECF No. 1-1 at 174. Lopez-Herrera did not appeal that decision. ECF No. 8-1 at 4, ¶ 7.

#### 2. Second Bond Hearing

Lopez-Herrera sought reconsideration of the first bond decision. ECF Nos. 1 at 6, ¶¶ 46–48; 1-2 at 22–42, 58–70. She argued that DHS improperly obtained many of the documents submitted as evidence, including the confidential report, and the IJ should not have considered those documents in making the decision to deny bond. ECF No. 1-1 at 31–106.

Lopez-Herrera's motion for reconsideration was denied in March 2019. ECF No. 1-1 at 174–75. The IJ found that Lopez-Herrera "is a danger to the community because she was

---

[2] The respondents represent that certain information presented in their response and motion was obtained by listening to audio recordings of the immigration proceedings, but they do not have a copy of those recordings or transcripts at this time. ECF No. 8 at 2 n.1. I will cite directly to the response where the respondents provided no additional citation.

4

charged with serious offenses of child abuse and neglect and because she permitted her child to be sexually abused by another person." *Id.* The IJ further held that the immigration court "may consider the charged offense in determining whether [a non-citizen] is a danger to the community, even if the [non-citizen] eventually pleads guilty to a different offense. *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40–41 (BIA 2006) (holding that in the context of custody determinations, an IJ is not limited to only consider criminal convictions in determining whether a non-citizen is a danger)).

Lopez-Herrera filed an appeal with the Board of Immigration Appeals ("BIA"). ECF No. 1-2 at 2–19. However, no decision has issued to date. *Id.* at 8, ¶ 60–64.

### *3. Third Bond Hearing*

In late April 2019, after the state court withdrew Lopez-Herrera's guilty plea and dismissed her criminal case with prejudice, she filed a motion for custody determination on materially changed circumstance. ECF No. 1-2 at 155–62. The motion was summarily denied in May 2019. ECF No. 1-2 at 182. Lopez-Herrera filed an appeal with the BIA, which is currently in the briefing process. ECF No. 1 at 8, ¶¶ 67–68.

### *4. Fourth Bond Hearing*

On July 1, 2019, Lopez-Herrera filed another motion for bond redetermination, alleging several errors in the third bond decision. ECF No. 1-3 at 2–56. The immigration court denied the motion without prejudice on July 11. ECF No. 10 at 9–12. The IJ acknowledged that a temporary injunction was in place until I decide whether this court has jurisdiction over the petition. *Id.* The IJ declined to reconsider Lopez-Herrera's bond until I decide the jurisdictional issue or lift the injunction, after which time she may refile her motion. *Id.*

### D. The Suppression Motion and Evidentiary Hearings

In March 2019, Lopez-Herrera challenged multiple issues in the immigration proceedings by filing a motion to suppress evidence, motion to set evidentiary hearing, motion to terminate immigration proceedings, and motion to compel DHS to produce *Dent* disclosures. ECF No. 1 at 5, ¶¶ 35–36. The immigration court held two evidentiary hearings on the suppression issues and issued a written order on April 30, 2019, granting in part and denying in part the motion to suppress. ECF No. 8 at 4–5.[3]

The IJ suppressed the confidential report, but not the I-213. *Id.* The IJ held that, although the I-213 may contain hearsay, the standard for admission of evidence in immigration proceedings requires only that evidence be probative and fundamentally fair to consider it. ECF No. 81- at 4, ¶ 10. Under this standard, the IJ found that the I-213 remained reliable and unambiguous and any errors in the form did not affect the substance of the information described. *Id.*

### E. Lopez-Herrera's Application for Cancellation of Removal

On May 13, 2019, Lopez-Herrera appeared before the IJ with counsel and entered a plea to the Notice to Appear, admitting to the allegations that she unlawfully entered the United States. ECF No. 8-1 at 4, ¶ 11. She also submitted an Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents ("application"), Form EOIR-42B, in which she concedes that she is unlawfully present in the United States. *Id.*; *see also* ECF No. 1 at 2, ¶ 4. A merits hearing on Lopez-Herrera's application was set for July 8, 2019, but the hearing was canceled as a result of the temporary injunction I entered.

---

[3] The parties do not address whether Lopez-Herrera appealed the decision on the suppression motion to the BIA.

*F. Federal Habeas Petition*

Lopez-Herrera initiated this action on July 2, 2019 by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241.[4] ECF No. 1. The petition alleges eight claims for relief: (1) "For immediate releas [*sic*] of Petitioner from government custody, or in the alterntive [*sic*] an immediate and impartial custody redetermination based only upon admissible evidence of Maria Lopez-Herrera's criminal activities, of which there is now *none*;" (2) "For an order requiring the [DHS] to transport [Lopez-Herrera] to any Eighth Judicial District Court hearings and in particular to any hearings that may adversely impinge upon or deprive her of her fundamental parental rights;" (3) "In light of Lorenzo-Lopez, whether the "putative NTA" in this case is sufficent [*sic*] to establish the removal jurisdiction of the Immigration Court;" (4) "For a stay of Immigration Court proceedings until this court decides whether the Notice to Appear is valid to establish Immigration Court jurisdiction;" (5) "For declarative judgment on whether a Designated Immigration Officer is authorized to issue a Record of Deportable/Inadmissible Alien (Form I-213);" (6) "For a declarative judgment on whether a [Form I-213] which includes the prior narrative of a Designated Immigration Officer is admissible as an inherently reliable hearsay document;" (7) "For a declarative judgment on whether a [Form I-213] which includes attachments added after its authentication by the Office of Chief Counsel is admissible as an inherently reliable hearsay document;" and (8) "For a complete *Dent* disclosure." ECF No. 1 at 10–11, ¶¶ 81–88.

---

[4] I initially denied Lopez-Herrera's request for an emergency stay of removal proceedings, finding that she had not established a likelihood of imminent irreparable harm and, therefore, was not entitled to an order staying removal proceedings or directing her immediate release. ECF No. 2. Lopez-Herrera subsequently filed the emergency motion, and I granted temporary injunctive relief. ECF No. 5.

## II. Analysis

Federal courts may grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The REAL ID Act of 2005, Pub. L. No. 109-13 Div. B, 119 Stat. 231, amended the INA to severely limit judicial review of removal orders. *See* 8 U.S.C. § 1252(a)(5); *Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (noting that the REAL ID Act made "the circuit courts the 'sole' judicial body able to review challenges to final orders of deportation, exclusion, or removal"). However, federal courts retain limited habeas jurisdiction under 28 U.S.C. § 2241 to review "bond hearing determinations for constitutional claims and legal error." *Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

The Ninth Circuit has outlined the proper procedure for challenging immigration bond determinations. *Leonardo v. Crawford*, 646 F.3d 1157, 1159 (9th Cir. 2011) (citing *Casas-Castrillon v. Dep't of Homeland Security*, 535 F.3d 942 (9th Cir. 2008)). Once a non-citizen has received a bond hearing before an IJ, he may appeal the IJ's decision to the BIA. *Id.* If the non-citizen "is dissatisfied with the BIA's decision, he may then file a habeas petition in the district court, challenging his continued detention." *Id.* The district court's decision on the habeas petition may be appealed to the Ninth Circuit. *Id.* Where a non-citizen does not follow this course, and thus does not exhaust administrative remedies before pursuing habeas relief, "a district court should ordinarily dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted administrative remedies, unless exhaustion is excused." *Id.* at 1160 (noting that a § 2241 petition may be properly pursued "[o]nce the BIA render[s] its decision"); *see also Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (habeas jurisdiction

8

under "§ 2241 is ordinarily reserved for instances in which no other judicial remedy is available") (citation omitted).

"Administrative exhaustion can be either statutorily required or judicially imposed as a matter of prudence." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citation omitted). In § 2241 habeas cases, the exhaustion requirement "is prudential, rather than jurisdictional." *Arango Marquez v. I.N.S.*, 346 F.3d 892, 897 (9th Cir. 2003). Thus, exhaustion is subject to waiver in certain instances. *Hernandez v. Sessions*, 872 F.3d 976, 988–89 (9th Cir. 2017)). "Nevertheless, prudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional." *Puga*, 488 F.3d at 815 (internal quotation marks and citation omitted). "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered." *Laing*, 370 F.3d at 998 (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) ("Prudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional."))._[5]_ District courts must determine whether "the exhaustion requirement has been satisfied or properly waived" before addressing the underlying merits. *Id.* (citation omitted).

As an initial matter, I find that I have jurisdiction over Lopez-Herrera's petition to the extent she seeks review of the IJ's bond determination.[6] Lopez-Herrera argues that she seeks review of constitutional and legal issues related to the bond determinations. Jurisdiction is

---

[5] Courts may require prudential exhaustion if "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga*, 488 F.3d at 815 (certain of those "factors" may be "particularly salient" in a given case) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).

[6] I make no finding that jurisdiction is proper as to any particular claim or request for relief.

9

proper under 28 U.S.C. § 2241 to review "bond hearing determinations for constitutional claims and legal error." *See Singh*, 638 F.3d at 1200. However, because Lopez-Herrera filed her petition before the BIA ruled on her appeals, her claims are unexhausted.

The petition and exhibits submitted from the underlying immigration proceeding clearly indicate that Lopez-Herrera has not exhausted her administrative remedies with the BIA or the family court. She did not wait to receive a BIA decision on her two pending appeals before filing the petition. "This short cut was improper." *Leonardo*, 646 F.3d at 1160 (citing *Rojas–Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003) (a petitioner "must exhaust administrative remedies before raising . . . constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal")). Once the BIA issues a decision, Lopez-Herrera may pursue habeas relief in this court, if necessary. *Id.*

Additionally, Lopez-Herrera has not demonstrated exhaustion of remedies in the family court. Nevada law states that "the family court has *original, exclusive jurisdiction in any proceeding*" brought under NRS Chapter 432B – Protection of Children from Abuse and Neglect, which governs all juvenile dependency matters such as the one involving Lopez-Herrera's children. NRS 3.223(1)(a). ICE Policy Number 11064.2 provides, in relevant part:

> **5.3 Participation in Family Court or Child Welfare Proceedings by Detained Alien Parents or Legal Guardians**
>
> 1) Where practicable, the FOD [Field Office Director] must arrange for a detained alien parent or legal guardian's in-person appearance at a family court or child welfare proceeding when the detained alien parent or legal guardian's presence is required in order for him or her to maintain or regain custody of his or her minor child(ren) and:
>    a) *The detained alien parent or legal guardian, or his or her attorney or other representative, timely requests with reasonable notice an opportunity to participate in such hearings;*
>    b) *The detained alien parent or legal guardian, or his or her attorney or other representative, has produced evidence of a family court or child*

10

> *welfare proceeding*, including but not limited to, a notice of a hearing, scheduling letter, *court order*, or other such documentation;
> c) The family court or child welfare proceedings are located within a reasonable driving distance of the detention facility where the detained alien parent or legal guardian is housed;
> d) Transportation and escort of the detained alien parent or legal guardian would not be unduly burdensome on Field Office operations; and
> e) Such transportation and/or escort of the detained alien parent or legal guardian to participate in family court or child welfare proceedings does not present security and/or public safety concerns.
> 2) If it is impracticable to transport the detained alien parent or legal guardian to appear in-person in a family court or child welfare proceeding, the FOD should accommodate the detained alien parent or legal guardian's appearance or participation through video or standard teleconferencing from the detention facility or the Field Office to the extent that it is technologically feasible and approved by the family court or child welfare authority. *The detained alien parent shall have the responsibility for obtaining approval from the family court or child welfare agency*.
> …

ICE Policy No. 11064.2 (effective Aug. 29, 2017), at § 5.3 (emphasis added), *available at* https://www.ice.gov/doclib/detention-reform/pdf/directiveDetainedParents.pdf (last visited Aug. 6, 2019).

Lopez-Herrera contends that ICE requires a writ of habeas corpus *ad prosequendum*[7] to transport her to and from hearings in family court. ECF No. 11 at 8; *see also* ECF No. 8-1 at 6, ¶ 16 ("While a person is in ICE custody, state courts will issue writs requesting that ICE bring a

---

[7]

> Habeas corpus is a generic term, embracing a variety of writs known to the common law. Included among these are habeas corpus *ad subjiciendum* (the "Great Writ" used to inquire into the cause of a prisoner's restraint), habeas corpus *ad prosequendum* (used to bring a prisoner to a jurisdiction wherein he may be criminally prosecuted), and habeas corpus *ad testificandum* (used to bring a prisoner to give evidence before a court).

*Maurer v. Pitchess*, 530 F. Supp. 77, 78 (C.D. Cal. 1981).

person to state court proceedings."[8]). The respondents state that counsel for Lopez-Herrera contacted ICE on May 7, 2019, regarding transporting her to a family court hearing. ECF No. 8-1 at 6–7, ¶ 16. The hearing was later rescheduled but, according to the respondents, no "writ was ever obtained to allow her to be transported to family court" and Lopez-Herrera's counsel did not follow up with ICE regarding transportation. *Id.*

The ICE policy demonstrates that a detained parent or his or her counsel can secure transportation or alternative arrangements by coordinating with ICE authorities and providing evidence of a proceeding in family court. The record does not show that immigration authorities are preventing Lopez-Herrera from resolving the dependency matter or preventing her attendance at the TPR trial in family court reportedly set for August 30, 2019. Lopez-Herrera does not indicate whether she petitioned the family court to issue a writ or an order for transportation to the TPR trial or other hearings. Thus, Lopez-Herrera has not demonstrated exhaustion of her available remedies in family court.

In addition, Lopez-Herrera has failed to show that waiver is appropriate. Exhaustion may be waived in situations "'where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void'." *Laing*, 370 F.3d at 1000–01 (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); citing *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2nd Cir.2003)).

Lopez-Herrera's sole argument for waiver asserts irreparable injury. She claims she faces irreparable harm absent a stay of removal. She asserts that the most likely outcome of her merits

---

[8] State district court judges have authority to issue all "writs proper and necessary to the complete exercise of their jurisdiction," including writs of habeas corpus for "any person who is held in actual custody in their respective districts." Nev. Const. art. VI, § 6.

hearing is an order of removal without bond, which would preclude any opportunity for her to complete the permanency plan and result in the termination of parental rights ("TPR"). Lopez-Herrera argues that deportation would make her participation in her own defense against TPR a practically impossibility. The loss of her three minor children would be permanent and irreparable.

The respondents counter that Lopez-Herrera has not shown irreparable harm. They point out that no final removal order has been issued so her request to stay removal is premature. Quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009), they contend that removal from the United States is not "a categorical irreparable injury." Although the respondents maintain that Lopez-Herrera has no absolute right to physically appear at a TPR hearing, they acknowledge that ICE is required to "arrange for detained alien parents to appear in family court as required in order for him or her to maintain or regain custody of their children." ECF No. 8-1 at 5, ¶ 16 (citing ICE Policy No. 11064.2).

Lopez-Herrera has not shown irreparable harm that would justify the court's waiver of her failure to exhaust. Because no final order of removal has issued, Lopez-Herrera speculates regarding deportation and the outcome of her merits hearing and the TPR trial. As previously addressed, a process exists for Lopez-Herrera to secure transportation to and from family court for the dependency matter, and ICE's official policy allows for her appearance.

Additionally, Lopez-Herrera has not shown any inadequacy in the administrative process. Her first claim seeks the same relief from this court that she seeks through her first appeal to the BIA: immediate release from custody because she is not a danger to the community or, alternatively, an immediate and impartial custody redetermination based upon only admissible

evidence.[9] *Compare* Petition (ECF No. 1 at 10, ¶ 82) *with* BIA Opening Brief (ECF No. 1-2 at 1–19). While the BIA appeals are pending, she filed the petition effectively seeking to bypass the administrative process entirely. Allowing a short-circuit of the clearly established BIA appeals process would result in unnecessary judicial review of unexhausted claims and encourage deliberate bypass of the administrative scheme. *Puga*, 488 F.3d at 815. Instead, "administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* Lopez-Herrera has not demonstrated that her administrative remedies are inadequate or not efficacious or that pursuit of administrative remedies would be a futile gesture. *See Laing*, 370 F.3d at 1000. Accordingly, I dismiss the petition without prejudice.

IT IS THEREFORE ORDERED as follows:

1. Petitioner Maria Lopez-Herrera's Emergency Motion for Stay of Removal Proceedings **(ECF No. 3) is DENIED**.

2. The order granting temporary relief **(ECF No. 5) is VACATED**.

3. The respondents' motion to dismiss **(ECF No. 8) is GRANTED**.

4. The petition **(ECF No. 1) is DISMISSED without prejudice** as unexhausted.

5. The clerk of court shall enter judgment accordingly.

Dated: August 12, 2019.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[9] The petition also states additional requests for relief. Lopez-Herrera filed a second appeal to the BIA; however, briefing was not completed at the time the petition was filed. ECF No. 1 at 8, ¶¶ 67–68. Lopez-Herrera did not subsequently submit her brief; thus, I am unable to compare the requests for relief from the second appeal. Nevertheless, the BIA has not issued a decision for either appeal. ECF No. 11 at 2–3.